JAMESON, District Judge.
This is an appeal from an order dismissing plaintiffs complaint for failure to state a claim. The complaint alleged a violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq. and Federal Reserve Regulation Z, 12 C.F.R. § 226, because of defendants’ alleged failure to disclose the proper finance charge of a certain consumer credit transaction. Defendants’ motion to dismiss was referred to a magistrate, who recommended that the motion be granted. The district court adopted the report and recommendations of the magistrate and entered an order dismissing the complaint. We affirm.
I. Factual Background
On December 10, 1981 the plaintiff-appellant, Hillary J. Hardison, received a Chapter 7 discharge in bankruptcy. Included in the schedule of debts was a secured debt of $2,980.00 to the defendant-appellee, General Finance Corporation of Illinois (GFC Illinois). Hardison alleged in his complaint that in May of 1982 he received a letter from defendants informing him that his credit was still good and that he could borrow more money; that he later requested, by telephone, a $1,200.00 loan and was notified that the loan’ had been approved.
When Hardison went to pick up ‘the check he was informed that in addition to the loan of $1,200.00, GFC Illinois intended to add $1,200.00 which would be used to repay part of the previously discharged debt of $2,980.00. Hardison agreed to this *894 transaction and signed the consumer credit contract.[1]
II. Proceedings in District Court
A. Plaintiffs Complaint
Hardison filed his action on behalf of himself and a class allegedly consisting of all consumers to whom credit was extended by defendants in a similar manner.
The complaint alleged a violation of TILA because GFC Illinois included the amount of the money loaned to repay Hardison’s previously discharged debt in the total amount financed rather than in the total finance charge. Hardison contended the $1,494.00 was a cost of credit and should have been disclosed as a finance charge in accordance with 15 U.S.C. §§ 1605 and 1631 and Regulation Z, 12 C.F.R. §§ 226.4 and 226.18. The complaint requested damages and injunctive relief.
B. Defendants’Motion to Dismiss
Defendants in their motion to dismiss for failure to state a claim contended, inter alia, that the reaffirmed portion of the discharged debt was a refinancing; that Hardison was not pressured or coerced to enter into the transaction; and that the loan consisted of a voluntary repayment of a previously discharged debt, which was not prevented by 11 U.S.C. § 524.
C. Decision of the District Court
In recommending that the district court grant the motion to dismiss for failure to state a claim, the magistrate relied upon the decision of the Federal Trade Commission (FTC) in In re Household Finance, 98 F.T.C. 68 (August 6, 1981). The magistrate noted that in that case
the FTC held that a lender, who as an incident to or a condition of an extension . of credit, required borrowers to reaffirm prior debts to the lender, which had previously been discharged in bankruptcy, did not violate Regulation Z by failing to include the amount of the reaffirmed debt as part of the finance charge. The FTC held that because the loans did not create new obligations, but resolved “existing” ones, they were, therefore, refinancings.
The magistrate found also that Household Finance applied the controlling official opinions of the Federal Reserve Board staff.
The magistrate’s report recommended that the court grant defendant’s motion to dismiss under Rule 12(b)(6) for failure to state a claim, as a matter of law, upon which relief could be granted. The district court followed this recommendation and entered an order dismissing the complaint.
III. Did the Complaint State a Claim for Relief
“[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). See also Jafree v. Barber, 689 F.2d 640, 642-43 (7th Cir.1982).
The sole issue on appeal is whether the district court properly dismissed plaintiff’s complaint for failure to state a claim for relief under the Truth in Lending Act (TILA). From our review of the statute, its history, the regulations, and prior decisions, we are convinced that the alleged conduct of the defendants did not constitute a violation of the TILA and that the plaintiff could prove no set of facts which would entitle him to relief.
By enacting TILA, Congress expressly intended to promote the “informed use of credit” by consumérs. The Act was designed “to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him____” 15 U.S.C. § 1601(a). Because of the complexity of the consumer credit field, Congress *895 delegated extraordinarily broad authority to the Federal Reserve Board to promulgate regulations and to provide “adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this title____” 15 U.S.C. § 1604(a) (as amended March 31, 1980). The Board exercised its authority by issuing Regulation Z, 12 C.F.R. § 226 (1979), which now includes appendices of forms and official staff interpretations of the regulatory and statutory language. See 12 C.F.R. § 226 (App. A-J & Supp. 1) (1983).
In recognition of the Board’s broad authority, the Supreme Court has stressed that judicial deference for the Board’s interpretive opinions “is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive....” Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). This deference, the Court commented, is compelled by the technical complexity of the Act and the Regulation. In particular, the Court observed:
The concept of “meaningful disclosure [of credit terms]” that animates TILA ... cannot be applied in the abstract. Meaningful disclosure does not mean more disclosure____ And striking the appropriate balance is an empirical process that entails investigation into consumer psychology and that presupposes broad experience in credit practices. Administrative agencies are simply better suited than courts to engage in such a process, [citations omitted].
444 U.S. at 568-69, 100 S.Ct. at 798-99 (emphasis in original). For these and other reasons, this court has consistently accorded considerable respect to the interpretations of the Board. See, e.g., Pridegon v. Gates Credit Union, 683 F.2d 182, 193-94 (7th Cir.1982); Croysdale v. Franklin Savings Assoc., 601 F.2d 1340, 1346 (7th Cir.1979).
We recite the well-established rule of deference to agency opinions because in late 1975 the Board’s staff issued an “information letter” clearly approving the practice that Hardison challenges in his complaint, namely inclusion of the reaffirmed debt in the amount financed rather than in the finance charge. The staff advised that reaffirmation of a debt discharged in bankruptcy “should be treated as a refinancing under [12 C.F.R.] § 226.8(j) [now § 226.20(a)].” More particularly, the staff recommended that .
the amount of the reaffirmed debt should not be included in the finance charge or reflected in the annual. percentage rate on any future extensions of credit to the debtor. Although the reaffirmation is a prerequisite to the bank’s consideration of future credit applications by the debt- or, the reaffirmation is not related to any particular credit extension; it is simply one element in the bank’s decision to make its credit services in general available to the debtor. Since the reaffirmation is not a condition of a specific credit extension, the amount of the reaffirmed debt would not, in staff’s view, come within the definition of a finance charge under [12 C.F.R.] § 226.4(a) of the Regulation.
FRB Public Information Letter No. 966 (Dec. 4, 1975). (emphasis added).
This staff opinion represents not only the Board’s interpretation but also the official position of the Federal Trade Commission (FTC), the agency charged by Congress with enforcing TILA and the Regulation under 15 U.S.C. § 1607(c). In In re Household Finance Corp., 98 F.T.C. 68 (August 6, 1981), the FTC considered and rejected a claim substantially similar to Hardison’s. The Commission relied extensively on the Board’s information letters, 98 F.T.C. at 100-02, and concluded that to add the reaffirmed debt to the finance charge would distort the annual percentage rate, thus frustrating the purpose of TILA to promote informed comparison shopping by consumers.
*896 Taken together, we must regard the Board's staff opinion and the FTC decision as dispositive of the facts alleged by Hardison unless the agencies’ position is “demonstrably irrational.” Milhollin, 444 U.S. at 565, 100 S.Ct. at 797. Hardison contends that the Board’s position is irrational for two reasons. First, he argues that the Board’s position is inconsistent with the Bankruptcy Reform Act’s general prohibition of reaffirmation agreements that are not approved by the bankruptcy court. See 11 U.S.C. § 524(c), (d). We disagree. TILA and the bankruptcy act address different issues. As applied to the present facts, TILA principally addresses the form and effect of reaffirmation agreements in disclosures to the consumer, apart from the validity of the agreements themselves. Where the validity of an agreement is questioned, it must be tested under the Bankruptcy Reform Act, independent of its form in the credit transaction.
Second, Hardison contends that a reaffirmation cannot be treated as a refinancing of an existing debt under 12 C.F.R. § 226.20(a) because the debt no longer “exists” by virtue of its discharge in bankruptcy. Hardison relies on Campbell v. General Finance Corp., 523 F.Supp. 989, 994 (W.D.Va.1981). In Campbell, the court considered facts similar to those before us and concluded the “failure to list the amount of reaffirmed debt as a finance charge on the loan contract violates the disclosure requirements of the Truth-In-Lending Act, 15 U.S.C. § 1605, and Regulation Z, 12 C.F.R. § 226.4.” Id. We decline to follow the ’ Campbell decision for three reasons. First, the Campbell court failed to distinguish between the purposes served by the Bankruptcy Reform Act and TILA. Second, the court relied on the administrative law judge’s initial decision in In re Household Finance Corp. which the FTC subsequently overruled at 98 F.T.C. 68, 106 (August 6, 1981). Finally, the court failed, to give the deference required by Milhollin to the Board’s interpretation of TILA and the Regulation.
IV. Conclusion
We find the Federal Reserve Board’s interpretation of the Truth-in-Lending Act and Regulation Z entirely rational and therefore dispositive of the facts before us. In light of the Board’s interpretation, it appears beyond doubt that Hardison can prove no set facts that would entitle him to relief under TILA. We therefore affirm the district court’s dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted.
Affirmed.

. The contract recites that the total amount financed was $2,694.99, that the total payments would be $4,494.00, including interest $1,709.20; life insurance $102.24; and disability insurance $172.57; payable at the rate of $107.00 a month for 42 months. Hardison received a check for $1,203.00.